IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DEAMONTE KENDRICKS,

Defendant.

CRIMINAL ACTION FILE

NO. 1:15-CR-400-MHC-AJB

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Alan J. Baverman [Doc. 47] that Defendant's Motion to Suppress Statements [Doc. 20] and Preliminary Motion to Suppress Cell Phone Evidence [Doc. 30] be denied.[1] The Order for Service of the R&R [Doc. 48] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. See also FED. R. CRIM. P. 59(a). Within the required time period, Defendant filed his objections to the R&R [Doc. 50] ("Def.'s Objs.").

---

[1] Defendant has withdrawn his Motion to Suppress Evidence relating to the seizure of the firearms [Doc. 19]. See Def.'s Br. in Supp. of Mot. To Suppress [Doc. 40] at 1.

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2012). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific objections to factual findings made by the magistrate judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

2

Defendant is charged with knowingly possessing certain firearms, having been convicted for a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  Criminal Indictment [Doc. 12].  The evidence sought to be suppressed by Defendant includes post-arrest statements made to law enforcement officers on October 6 and 12, 2015, and evidence obtained from a search of Defendant's cellular telephone pursuant to a warrant. See Aff. & Appl. for a Search Warrant [Doc. 40-1] at 1-3; see also Search Warrant [Doc. 40-1] at 4-5.

## I.   MOTION TO SUPPRESS STATEMENTS

### A.   FACTS

On October 1, 2015, Defendant was arrested following a high-speed pursuit by police officers of a vehicle driven by Defendant and Defendant's flight on foot from that vehicle after it crashed into a guardrail.  Tr. of Suppression Hr'g held Feb. 23, 2016 [Doc. 42] ("Tr.") at 22-24, 26-29.  The two firearms that Defendant is charged with possessing were found in the vehicle along with Defendant's cellular phone.  Id. at 35-37.  Arrest warrants were issued, charging Defendant with violations of O.C.G.A. §§ 16-13-30 (two counts of violating the Georgia Controlled Substances Act); 16-8-7 (theft by receiving stolen property); 16-11-106 (possession of a firearm during the commission of a felony); 16-10-24 (willful

3

obstruction of a law enforcement officers); 40-6-395 (fleeing and attempting to elude a police officer); 16-15-4(a) (unlawful association with a criminal street gang to conduct or participate in a felony); and a number of traffic offenses. State Warrants for Arrest [Doc. 34-1].

On October 2, 2015, a contract conflict attorney with the Metro Conflict Defender filed an "Entry of Appearance and Assertion of Rights" on behalf of Defendant providing notice of Defendant's assertion of his right to remain silent and not incriminate himself as well as notice that "any prior waiver of these rights is hereby immediately revoked, and any consent or permission granting waiving any of these rights is hereby revoked." [Doc. 40-2.] Moreover, the form provided that "Defendant hereby respectfully demands that any and all requests for any waiver of these rights be directed solely to his . . . attorney(s)." Id.

On October 6, 2015, Atlanta Police Homicide Detective Jim Thorpe, Jr. ("Thorpe") went to the Fulton County Jail in accordance with a Fulton County Superior Court Judge's production order that Defendant be remanded over to Thorpe's custody to be interviewed in relation to a homicide investigation. Tr. at 50-51. Thorpe introduced himself to Defendant and indicated he wanted to question Defendant about a homicide investigation. Id. at 51. Aside from some casual conversation, Thorpe did not question Defendant concerning any criminal

4

matters during the ride to Atlanta Public Police Safety Headquarters, and Defendant made no request for an attorney nor indicated that he had an attorney. Id. at 52-53.

Upon arrival at police headquarters, Thorpe took Defendant to an interview room where Defendant was questioned by Thorpe and two members of the Atlanta Police Gangs Intelligence Unit. Id. at 54-57. The interview was audio and video recorded. Id. at 54-55; Gov't Ex. 15. At the beginning of the interview, Thorpe read Defendant from a preprinted form entitled "Waiver of Counsel by Defendant in Custody," which is reprinted in its entirety in the R&R. Tr. at 58-60; Gov't Ex. 16 [Doc. 49-2]; R&R at 4-5. Defendant read the form, initialed each of the paragraphs setting forth his Miranda[2] rights, and signed and dated the form. Tr. at 59-61; Gov't Ex. 16. Thorpe also asked Defendant how much education he had, and Defendant responded that he graduated from Grady High School. Tr. at 61-62.

During the course of over two hours of the initial interview, Defendant did not ask to speak with an attorney. Tr. at 63. At some point during the interview, Detective Joe Golphin ("Golphin"), who was investigating a separate homicide incident, entered the room. Id. Defendant then indicated he wanted to talk with his attorney, and questioning stopped. Id. at 64-65. Defendant asked Thorpe if he

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

could smoke a cigarette prior to going back to jail, and Thorpe escorted Defendant down to the back sally port and let him have a cigarette. Id. at 64, 66.  Defendant told Thorpe that he did not mind talking to Thorpe and the detectives other than Golphin, but would not talk to Golphin without his attorney. Id. at 67.  Thorpe escorted Defendant back to the interview room, and was given food to eat and allowed a bathroom break. Id. at 68-70.  Defendant then went on the record repeating that he would speak to Thorpe and the two Atlanta Police Gangs Intelligence Unit detectives, but that he wanted his attorney present if Detective Golphin came back and talked with him. Id. at 68, 70-71.  The questioning resumed without Golphin until the detectives had no further questions, and at no time did Defendant ask for the interview to stop or ask to speak to his attorney. Id. at 71-72.  Thorpe transported Defendant back to jail and asked Defendant if he would respond to further questions if Thorpe wanted to speak with him again, to which Defendant responded in the affirmative. Id. at 72-73.

On October 12, 2015, Thorpe again obtained a production order to have Defendant remanded to his custody for a further interview. Id. at 74.  Thorpe again asked Defendant if he would speak with Thorpe, and Defendant indicated that he would and did not request an attorney (nor had Thorpe's attorney contacted Thorpe prior to this second interview). Id. at 74-75.  Thorpe transported Defendant back to

the interview room at police headquarters where the interview was again audio and video recorded. Id. at 75-76. Thorpe again read Defendant an identical waiver of counsel form and, once again, Defendant read, initialed each of the paragraphs setting forth his Miranda rights, and signed and dated the waiver. Id. at 77-78; Gov't Ex. 18 [Doc. 49-2]. Defendant asked Thorpe if this meant he would never have a lawyer, and Thorpe responded that if Defendant wanted a lawyer present, he could just ask and the police would stop all questioning. Tr. at 79. Defendant indicated he was willing to be interviewed and the interview continued for over two hours (the two members of the Atlanta Police Gangs Intelligence Unit participated in a portion of the interview), during which time Defendant never requested to speak to an attorney. Id. at 76, 80-81; Gov't Ex. 18.

Although Defendant never requested to speak to an attorney during the interviews (except for the time in the October 6 interview when Defendant indicated he would not speak to Detective Golphin outside the presence of his attorney), Thorpe knew that Defendant had an attorney appointed to represent him after his first appearance in court based upon the practice of a public defender being appointed at the initial appearance. Tr. at 88-89, 92. Defendant made admissions about the firearms that are the subject of the present Indictment during the October 6 and 12, 2015, interviews. Id. at 96.

7

## B.   DISCUSSION

In his objections, Defendant contends that the Metro Conflict Defender's October 2, 2016, "Entry of Appearance and Assertion of Rights" form invoked his Sixth Amendment rights and that the subsequent Miranda warnings given to Defendant were insufficient to waive those rights and to permit police officers to question him without the presence of his attorney. Def.'s Objs. at 5. Defendant contends that this case "lies at the intersection of Michigan v. Jackson, 475 U.S. 625 (1986), and Montejo v. Louisiana, 556 U.S. 778 (2009)," and that the Magistrate Judge improperly relied upon Montejo[3] in concluding that Defendant when approached by law enforcement could have waived his right to be questioned only in the presence of counsel. Id. at 5-6.

In Jackson, the Supreme Court held that once a defendant requests the appointment of counsel at an arraignment or similar proceeding, he must be afforded the opportunity to consult with counsel before police initiate further interrogations, and written waivers of the right to counsel are insufficient to justify such interrogations. Jackson, 475 U.S. at 636. However, Jackson was overruled

---

[3] For purposes of preserving the issue for further review, Defendant also asserts that Montejo "was wrongly decided." Def.'s Objs. at 6. This Court is bound to apply Supreme Court precedent. As the Supreme Court has stated, "it is this Court's prerogative alone to overrule one of its precedents." United States v. Hatter, 532 U.S. 557, 567 (2001) (citation omitted).

8

by Montejo: "Michigan v. Jackson should be and is now overruled." Montejo,

556 U.S. at 797. Montejo, who was charged with murder, was brought before a

judge for a preliminary hearing, and a public defender was appointed to represent

him. Id. at 781. After that appointment, police detectives asked Montejo to

accompany them to locate the murder weapon, was read his Miranda rights, and

Montejo agreed to go with the detectives, where he wrote an inculpatory letter of

apology to the victim's widow. Id. It was only after his return to prison that

Montejo met with his court-appointed attorney. Id. at 782.

The Supreme Court rejected Montejo's claim that the letter should be

suppressed because the police were forbidden to initiate an interrogation once

counsel was appointed at the arraignment:

> [I]t should be clear that Montejo's interpretation of [Jackson]—that no
> *represented* defendant can ever be approached by the State and asked
> to consent to interrogation—is off the mark. When a court appoints
> counsel for an indigent defendant in the absence of any request on his
> part, there is no basis for a presumption that any subsequent waiver of
> the right to counsel will be involuntary. There is no "*initial* election"
> to exercise the right . . . that must be preserved through a prophylactic
> rule against later waivers. No reason exists to assume that a defendant
> like Montejo, who has done *nothing at all* to express his intentions
> with respect to his Sixth Amendment rights, would not be perfectly
> amenable to speaking with the police without having counsel present.
> And no reason exists to prohibit the police from inquiring.
>
> In    practice,   Montejo's   rule   would   prevent   police-initiated
> interrogation entirely once the Sixth Amendment right attaches, at
> least in those States that appoint counsel promptly without request

9

from the defendant. . . . That would have constituted a shockingly dramatic restructuring of the balance this Court has traditionally struck between the rights of the defendant and those of the larger society.

Id. at 789 (emphasis in original; citations and internal quotation marks omitted).[4]

Montejo expressly permits police to approach and question a defendant for whom counsel has been appointed as long as that defendant himself does not invoke his right to counsel under the Sixth Amendment. Contrary to Defendant's assertion, this case does not lie "at the intersection" of Jackson and Montejo, rather, it falls within the specific holding of Montejo, provided that Defendant's waiver of his Sixth Amendment rights was "voluntary, knowing, and intelligent." Montejo, 556 U.S. at 786. It is not necessary that a defendant be represented by counsel at the time he chooses to waive his Sixth Amendment right. Id. A waiver is generally considered knowing and intelligent if the defendant is apprised of his Miranda rights, including the right to have counsel present during interrogation, and agrees to waive those rights. Id. The question in this case is whether Defendant properly waived his Miranda rights prior to being interrogated.

_____

[4] Montejo reaffirms the holding in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), that, pursuant to the Fifth Amendment, once an accused invokes his right to counsel during a custodial interrogation, he cannot be compelled to further interrogation until after counsel has been made available. Montejo, 556 U.S. at 787 (citing Edwards). In this case, Defendant does not raise an Edwards violation.

The Court finds that Judge Baverman correctly applied the relevant Sixth

Amendment case law to Defendant and that Defendant waived his Sixth

Amendment right to counsel.

> In this case, Kendricks was advised of his rights to counsel and to
> remain silent in writing at the commencement of questioning on both
> October 6 and October 12, and the video-recording of each session
> showed that he read the warnings, initialed each one denoting that he
> understood them, and signed the waiver of his rights.  In addition to
> the video appearing to show him reading the rights forms, the record
> shows that he had a twelfth-grade education.  Thus, Kendricks was
> advised of his rights, knew what rights he had, and had sufficient
> intelligence to waive them.

R&R at 20.  As also found by Judge Baverman, there is no evidence that

Defendant's waivers were the product of coercion or intimidation and, when

Defendant did invoke his right to stop answering question in the October 6 session,

the questioning stopped.  Id. at 21-22.  It was Defendant who then initiated the

discussion with Thorpe in the sally port where Defendant stated that he would

answer additional questions as long as Golphin was not present during the

interrogation.  Defendant then confirmed that discussion once he and Thorpe

returned to the interview room.

Defendant also objects to Judge Baverman's consideration of United States

v. Rojas, 553 F. App'x 891 (11th Cir. 2014), because it is unpublished and "offers

little insight" in analyzing the motion to suppress.  Def.'s Objs. at 5-6.  First,

because Judge Baverman's decision is supported by <u>Montejo</u>, a Supreme Court

decision, the reliance on <u>Rojas</u> is not determinative.  Second, <u>Rojas</u> constitutes

additional persuasive authority[5] in support of the R&R.

In <u>Rojas</u>, after the defendant retained private counsel, he surrendered himself

for arrest, signed a waiver of his <u>Miranda</u> rights without his attorney, and gave a

statement to DEA agents.  553 F. App'x at 892.  The Eleventh Circuit, relying on

<u>Montejo</u>, affirmed the district court's denial of the motion to suppress the

statement.

> The government lawfully procured Rojas's post-arrest statement.
> First, the district court properly found that Rojas failed to sufficiently
> invoke his right to have his attorney present at the post-arrest
> interview before the questioning began.  Rojas presented no evidence,
> and does not assert on appeal, that he expressly requested his
> counsel's presence for the interview.  Although he argues that his pre-
> arrest retention of an attorney was a standing invocation of his right to
> counsel, the argument fails under <u>Montejo</u>.  Although he attempts to
> distinguish his case from <u>Montejo</u> based on the fact that he retained
> private counsel, rather than having an attorney appointed for him, the
> distinction is irrelevant.   The Court in <u>Montejo</u> emphasized a
> defendant's ability to clearly assert, and thus sufficiently safeguard,
> his right to counsel at any critical stage following indictment, and it
> rejected the notion that the acquisition of counsel affected the ability
> or rendered it irrelevant.  Likewise, Rojas's retention of counsel in no
> way limited his ability to clearly express a desire to have his attorney
> present for the post-arrest interview.

---

[5] Under Eleventh Circuit law, an unpublished decision is not "controlling
authority" and "is persuasive only insofar as [its] legal analysis warrants."  <u>Bonilla
v. Baker Concrete</u>, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

> Because Rojas did not assert his right to counsel, the DEA agents
> were free to seek a waiver of his rights and initiate questioning.
> Moreover, the record supports the court's finding that his waiver was
> knowingly and voluntary.  One of the interviewing agents testified
> that (1) he explained Rojas's rights to him; (2) Rojas said he
> understood his rights; and (3) Rojas nonetheless proceeded to sign the
> waiver form.

Rojas, 553 F. App'x at 893-94 (citations omitted).  Defendant argues that Rojas is

not persuasive because, unlike Defendant, Rojas had retained counsel and it was

not clear whether he was interrogated before or after his initial appearance.  Def.'s

Objs. at 6.  However, the Rojas court, in reliance on Montejo, found that its

holding applied even though Rojas' attorney was retained rather than appointed

(which was the situation in Montejo).  Montejo clearly applies to this case because

both Montejo and Defendant had counsel appointed to represent them prior to the

initiation of the interrogation by police.  Moreover, Rojas self-surrendered for

arrest without his attorney after his indictment, was approached by police about

giving a statement, and waived his Miranda rights.  Here, Defendant also was

approached by police, asked to give statements, chose not to invoke his Sixth

Amendment right to counsel, and waived his Miranda rights.  The rejection of

Rojas' contention that the retention of his lawyer constituted a "standing

invocation of his right to counsel" is an argument made by Defendant and is

rejected here for the same reasons as expressed in Rojas: "[T]he argument fails under Montejo." 553 F. App'x at 893 (citation omitted).

Finally, Defendant contends that Judge Baverman improperly relied on United States v. Grimes, 142 F.3d 1342 (11th Cir. 1998), for the proposition that the Conflict Defenders' assertion of Defendant's right to counsel cannot be invoked in an anticipatory manner in the entry-of-appearance form because Grimes only applies to the Fifth Amendment right to counsel. Def.'s Objs. at 6; see also R&R at 18. In Grimes, the defendant was arrested on worthless check charges and signed a claim of rights form where he "purported to assert his right to counsel under the Sixth Amendment and his right to remain silent and right to counsel under the Fifth Amendment." Grimes, 142 F.3d at 1345 n.3. At the request of investigators, another person solicited incriminating statements from Grimes which led to additional charges, and Grimes argued that the statements should be suppressed because "his execution of the claim of rights form effectively invoked his Fifth Amendment and Sixth Amendment rights for all subsequent purposes." Id. at 1347. The Eleventh Circuit rejected both contentions, but based its rejection on the Sixth Amendment assertion because Grimes was prosecuted on charges that were different than those for which he signed the claim of rights form. Id. at 1348.

14

As with Defendant's argument on the Magistrate Judge's improper reliance on Rojas, this case is controlled by Montejo.

> The Jackson Court decided that a request for counsel at an arraignment should be treated as an invocation of the Sixth Amendment right to counsel "at every critical stage of the prosecution," despite doubt that defendants "actually inten[d] their request for counsel to encompass representation during any further questioning," because doubts must be "resolved in favor of protecting the constitutional claim." Citing Edwards [v. Arizona, 451 U.S. 477 (1981)], the Court held that any subsequent waiver would thus be "insufficient to justify police-initiated interrogation." In other words, we presume such waivers involuntary based on the supposition that suspects who assert their right to counsel are unlikely to waive that right voluntarily" in subsequent interactions with police.
>
> ****
>
> Montejo's interpretation of [Jackson]—that no *represented* defendant can ever be approached by the State and asked to consent to interrogation—is off the mark. When a court appoints counsel for an indigent defendant in the absence of any request on his part, there is no basis for a presumption that any subsequent waiver of the right to counsel will be involuntary. There is no "*initial* election" to exercise the right that must be preserved through a prophylactic rule against later waivers.

Montejo, 556 U.S. at 787-89 (citations and internal punctuation omitted; emphasis in original). Regardless of the applicability of Grimes to this case, Montejo clearly is dispositive and permitted police to approach Defendant and obtain a valid Miranda waiver prior to their interrogation.

Therefore, Defendant's objections to the R&R's recommendation that his motion to suppress statements be denied are **OVERRULED**.

## II.   MOTION TO SUPPRESS CELL PHONE EVIDENCE

### A.   FACTS

Following the high-speed chase and Defendant's flight from the vehicle in which he was driving, Atlanta Police Department Investigator Tyrone Davis applied for and obtained a search warrant for an Apple iPhone 6 seized from the front seat of the vehicle.  Aff. & Appl. for a Search Warrant; Search Warrant .  The narrative portion of the warrant application is restated in relevant part in the R&R, and the warrant permitted the iPhone to be electronically extracted for "incoming call logs, outgoing call logs, missed call logs, text messages, electronic mail, pictures, internet history, [and] cell tower locations      . . . ."  Id.; R&R at 29-31.

Defendant objects to Judge Baverman's conclusion that a nexus between the crime and the cell phone was sufficiently established.  Def.'s Objs. at 1-5.  Although Defendant concedes that a nexus can be established by circumstantial evidence and not on direct observation, he contends there is no indication in the warrant application as to what evidence of the crime would likely be found on the cell phone.  Def.'s Objs. at 1-2.

### B.   DISCUSSION

A sufficient basis for probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place. A fair probability, in turn exists when the facts and circumstances

16

> would lead a reasonably prudent person to believe that the place to be
> searched contains contraband or evidence of a crime.

United States v. Noreiga, 676 F.3d 1252, 1261 (11th Cir. 2012) (citation omitted);

see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999)

("Probable cause to support a search warrant exists when the totality of the

circumstances allow a conclusion that there is a fair probability of finding

contraband or evidence at a particular location."). The Supreme Court has warned

against hyper-technical reviews of search warrant affidavits. Illinois v. Gates, 462

U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept – turning on the

assessment of probabilities in particular factual contexts – not readily, or even

usefully, reduced to a neat set of legal rules."). Rather, a magistrate should make

"a practical, common-sense decision whether, given all the circumstances set forth

in the affidavit before him, including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that contraband

or evidence of a crime will be found in a particular place." Id. at 238. In cases

determining whether there is probable cause to issue a search warrant, it is well-

established that courts may rely on the type of opinion evidence, based on a law

enforcement officer's training and experience. United States v. Robinson, 62 F.3d

1325, 1331 n.9 (11th Cir. 1995).

This Court has reviewed the affidavit in support of the application for the search warrant and agrees with Judge Baverman that probable cause existed to show the nexus between the investigation of violent gang activity and Defendant's iPhone.

> Here, probable cause existed to show the requisite nexus between the violent gang activity being investigated under O.C.G.A. § 16-15-4(a) and Kendricks's cellphone. The affidavit showed that Kendricks was a gang member, he was in a vehicle with another gang member, and his gang was in a retaliatory dispute with another gang. The vehicle from which he fled contained the cell phone, along with a .40 caliber handgun and an AK-47 assault rifle, weapons the affiant deemed consistent with prior retaliatory shootings. One such shooting involving members of Kendricks's gang occurred four days prior to the October 1 incident, and the weapons, how Kendricks was dressed, and the fact that Kendricks was in the rival gang's territory reasonably led Dennis to conclude that Kendricks and Arnold were seeking to retaliate for the September 26 shooting. Since both Kendricks and Arnold possessed cell phones, given these circumstances, it was likely that, at a minimum, evidence that they communicated with each other and others about the rivalry and possible retaliatory acts, including acts of retaliation that already had occurred, would be contained on Kendricks's cell phone. Thus, it made perfect common sense for the issuing judge to infer that information related to these acts would be found in or on the phone.

R&R at 38-39.

Defendant cites to several cases where the warrant affidavit set forth the affiant's averment that, based upon the affiant's knowledge and experience, there would likely be a connection between the place or item searched and the crime or person being investigated, and complains that the affiant in this case makes no

such representation. Def.'s Objs. at 3-4. Although it is well-established that courts may rely on an affiant's assertions of his or her knowledge and experience in determining whether probable cause exists to issue the warrant, such representations are not required. Indeed, it takes no special expertise for a judge to infer that information related to an active criminal enterprise may be contained on a cell phone. See Riley v. California, 134 S. Ct. 2473, 2493 (2014) (recognizing that "[c]ell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals"); United States v. Henry, No. 1-09-CR-522-1-TCB-GGB, 2010 WL 5559207, at *10 (N.D. Ga. Dec. 7, 2010) (finding that the affidavit that set forth the background information of a drug conspiracy provided probable cause for the "search of the computer and cell phone").

This Court agrees with Judge Baverman that "the warrant was supported by an adequate nexus between the cell phone and crimes under investigation . . . ." R&R at 39. Therefore, Defendant's objections to the Magistrate Judge's recommendation that the motion to suppress cell phone evidence should be denied are **OVERRULED**.

19

### III.    <u>CONCLUSION</u>

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 50].  Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 47] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant's Motion to Suppress Statements [Doc. 20] and Preliminary Motion to Suppress Cell Phone Evidence [Doc. 30] are **DENIED**.

**IT IS SO ORDERED** this 13th day of October, 2016.

MARK H. COHEN
United States District Judge